# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LEONARDO MARIN,**

            **Plaintiff,**

**-vs-**                                    **Case No.  6:07-cv-00461-Orl-31UAM**

**COMMISSIONER OF SOCIAL SECURITY,**

            **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

       Plaintiff Leonardo Marin ["Marin"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying Marin's application for a period of disability and disability insurance benefits.  *See* Docket No. 1 (complaint).  For the reasons set forth below, it is recommended that the Commissioner's decision be **AFFIRMED**.

## I.     PROCEDURAL HISTORY

       On July 21, 2004, Marin filed a claim for disability insurance benefits and a period of disability, claiming disability as of December 6, 2003. R. 55. On August 2, 2006, the Honorable Robert D. Marcinkowski, Administrative Law Judge ["ALJ"], held a hearing on Marin's claim in Orlando, Florida. R. 1015-1054.  Attorney Richard A. Culbertson represented Marin at the hearing.  R. 1015.  The ALJ heard testimony from Marin and vocational expert Jane Beougher ("VE"). R. 15, 1015.

       On October 5, 2006, the ALJ issued a decision that Marin was not disabled and not entitled to benefits.  R. 15-28.  Following a review of the medical and other record evidence, the ALJ found that

Marin cannot perform his past relevant work. R. 27, Finding 7.  The ALJ determined that Marin has the following residual functioning capacity ("RFC"):

> stand, walk and sit six hours in an eight-hour workday and lift twenty points. The claimant has occasional limitations with his left upper extremity of pushing and pulling, handling and reaching.  The claimant has occasional postural limitations in climbing, balancing, stooping, kneeling, crouching and crawling. He can never climb ladders, ropes or scaffolding. He needs to avoid exposure to unprotected heights and moving machinery. The claimant can perform, understand, remember and carry out simple and routine instructions and tasks on a sustained basis.

R. 27, Finding 6. Additionally, the ALJ found that Marin has the RFC to perform a significant range of light work. R. 27, Finding 11.  Finally, the ALJ found that there are a significant number of jobs in the national economy that Marin can perform although his exertional limitations do not allow him to perform a full range of light work. R. 27, Finding 12. The ALJ concluded that Marin is not disabled.  R. 27, Finding 13.

On February 21, 2007, the Appeals Council denied review.  R. 5-7.  On March 15, 2007, Marin timely appealed the Appeals Council's decision to the United States District Court.  Docket No. 1.  On July 30, 2007, Marin filed in this Court a memorandum of law in support of his appeal.  Docket No. 12. On October 1, 2007, the Commissioner filed a memorandum in support of his decision that Marin was not disabled.  Docket No. 13.  The appeal is ripe for determination.

## II.   THE PARTIES' POSITIONS

Marin assigns two errors to the Commissioner.  First, Marin argues that the ALJ denied his counsel the right to ask the vocational expert questions material to the issues.  Second, Marin claims the ALJ did not include all of his limitations in the hypothetical questions posed to the vocational expert at

the administrative hearing. The Commissioner argues that substantial evidence supports his decision and the decision should be affirmed.

### III.   <u>THE STANDARD OF REVIEW</u>

####    A.   **AFFIRMANCE**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

### B.     REVERSAL

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause.   42 U.S.C. § 405(g)(Sentence Four).   The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.   *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).   This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.   *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord, Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

### C.     REMAND

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.   *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).   To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.   *Jackson*, 99 F.3d at 1090 - 91

(remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090 - 92;  *Cannon v.*

*Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986);

*Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also*, *Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095. With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson*, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[1] *Id.*

## V.   **APPLICATION AND ANALYSIS**

### A.   **THE FACTS**

Marin was born March 31, 1958. R. 55. On his onset date of December 6, 2003, Marin was 45 years of age. *Id.* He finished the tenth grade and dropped out of high school in the eleventh grade in Colombia. R. 1020-1021. He did not receive a high school general equivalency diploma but reads and speaks English. *Id.* From 1990 until 2004 Marin worked as a server, a boxboy, a fast food server, and a waiter. R. 71-75. Marin ceased work in December 2003 and unsuccessfully attempted to return to work three or four times in 2004. R. 71-75 and 1022. He alleges that he became disabled on December 6, 2003 due to a herniated disc in his back, hepatitis, and a left hand injury. R. 16.

---

[1]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.* Any Plaintiff intending to seek attorney's fees for past-due benefits under 42 U.S.C. § 406(b)(1)(A) shall move the Court to include in any remand order an extension of the 14-day period described in Fed. R. Civ. P. 54(d)(2)(B) so as to specify an extended deadline that follows the Commissioner's determination of Plaintiff's past-due benefits. *Bergen v. Comm'r of Soc. Sec.*, 454 F. 3d 1273, 1278 n.2 (11th Cir. 2006).

Marin was employed at Walt Disney World from February 25, 1999 to December 23, 2006. R. 297-509. During his employment, he was treated primarily for low back pain and laceration of his left hand. R. 857-865, 334-372.

His medical problems began culminating on September 9, 1999 after he was injured on the job and made a timely report to Worker's Compensation on a form provided by Disney. R. 226. A March 9, 2000 MRI of his lumbar spine showed disc hydration with a shallow central to left sided herniation at L5-S1 encroaching on the left S1 nerve root. R. 473, 526-527.

Marin was treated by Physicians Associates of Florida from February 19, 2001 until February 17, 2005 for lower back pain, left hand pain, follow up chest pain, hypothyroidism, insomnia and respiratory infection. R. 531-618. A January 22, 2002 MRI of his cervical spine showed a disc bulge and spondylosis indenting the thecal sac at C5-6 and a disc bulge and spondylosis indenting the thecal sac at C6-7. R. 906. A January 23, 2002 MRI of his lumbar spine showed loss of disc height and hydration with a posterior central herniated nucleus pulposus affecting the ventral epidural fat and narrowing of the neural foramina at L5-S1. R. 204, 905, 931.

In August 2003 he complained of chronic thoracic back pain, and the examination showed paraspinal muscle tenderness in the mid thoracic region; he was diagnosed with mid thoracic back pain and chronic lower back pain with a history of a herniated nucleus pulposus. R.564.

In February 2004 he was prescribed Paxil for stress and chronic pain, R. 555, but quit taking it because it made him too hyperactive. R. 552. An October 2004 EKG was normal and the assessment was atypical chest pain. R. 550-551. A June 1, 2004 MRI of his lumbar spine showed a central disc protrusion at L5-S1. R. 791.

A January 2005 MRI of the thoracic spine showed mild disc desiccation without any bulge, herniation or spinal stenosis. R. 537. An August 12, 2005 MRI of his cervical spine showed left posterolateral disc herniation at L5-6 and C6-7 with impingement of the left C6 and C7 nerve roots and partial hydration of the discs. R. 876 and 882. An October 2005 MRI of the cervical spine showed a herniated disc at C5-6 and C6-7 with impingement on the left at C6-7, resulting in an assessment of chronic cervical neck pain with a herniated disc. R. 866.

On December 6, 2003, his alleged onset date, Marin cut his left hand when a rack of dishes fell and broke, lacerating his median nerve. R. 1025, 1034. Consequently, Marin reported he was unable to work because his left forearm, wrist and hand were extremely painful. R. 662. He complained of loss of sensation in his thumb and fingers. R. 664-665.

He was treated for this hand injury by Jerry A. Rubin, M.D. from December 2003 until March 2005. R. 645-678. He complained to Dr. Rubin in December 2003 of a left hand laceration with a loss of sensation in the thumb and finger. R. 664-665. Upon examination, Dr. Rubin found weakness on the thenar muscles and pain on flexion of the index and long fingers as a result of a laceration of the left palm thenar region. R. 664. Dr. Rubin repaired the partial median nerve laceration with an open carpal tunnel release. R. 646-665.

Dr. Rubin diagnosed status post repair of the left palm median nerve injury and complex regional pain syndrome. R. 662. Marin was released to light duty in February 2004 with lifting not to exceed two pounds and no repetitive lifting, pushing, pulling, grasping or pinching with the left hand. R. 659. A November 17, 2004 electrodiagnostic study showed general improvement in his nerve conduction and needle EMG. R. 649. In January through March 2005 he was placed on light duty with no lifting more

-8-

than five pounds and no repetitive lifting, pushing, pulling, grasping or pinching with the left hand. R. 646-647.

Marin was treated by Marc R. Gerber, M.D. for his chronic lower back and left hand pain. R. 779-787. Dr. Gerber recommended that Marin avoid lifting over 25 pounds and that he could stand for 30 minutes and then sit for five minutes, making these permanent work limitations on December 6, 2004. R.782. Dr. Gerber kept him on temporary total disability and imposed work restrictions on December 11, 2004 that the patient should have the opportunity to sit every 30 minutes after a prolonged period of standing and walking. R. 781. On December 6, 2004, Dr. Gerber completed a physical limitation form in which he stated that Marin was limited to lifting 25 pounds and may need to take a five minute break after three hours of standing, walking or sitting. R.782.

Upon examination, Dr. Gerber found that Marin had difficulty extending his second, third and fourth fingers and could not make a fist. R. 800. Dr. Gerber deferred any restrictions related to his left hand to Dr. Rubin, who placed no physical restrictions on Marin other than avoiding work with his left upper extremity. R. 799.

Vincent Rahal, D.C. treated Marin at the Nuestro Chiropractic Center from August 12, 2005 until September 10, 2005 for complaints of mid and low back pain subsequent to an auto accident in February 2005. R. 715-729. An August 12, 2005 MRI of the cervical spine showed disc herniation at C4-5, left posterolateral disc herniation at C5-6, causing narrowing of the neuroformina and impingement of the C6 and C7 nerve roots. R. 718, 721, 882. Dr. Rahal's examination showed tenderness over the left posterior cervical spine and mild muscle spasms, a restricted range of motion in all planes, and restricted lumbar flexion and extension, muscle weakness of all fingers in the left hand, a wrist movement of 3/5, and left

hand muscle atrophy R. 717. The chiropractor opined that Marin was limited to sitting one to two hours in an 8-hour day and to sitting not more than 30 minutes at a time with a five minute break and no lifting whatsoever. R. 720.

Marin was examined at the Florida Center for Orthopaedics on November 1, 2005. R. 873-876. He received a second opinion from Richard C. Smith, M.D. for complaints of neck pain and tingling in both arms and lower back pain radiating into his left leg. R. 873. Upon examination, Dr. Smith found weak motor function and muscle spasms on the left and tenderness in the lumbar spine with and recommended an anterior fusion with plating and instrumentation. R. 874, 875. A January 25, 2006 MRI revealed moderate to marked degenerative narrowing at L5-S 1 with reactive end plate changes and severe foraminal stenosis, left more than right. R. 936. Marin underwent a L5-S 1 laminectomy, bilateral fusion and bilateral pedicle screw instrumentation with a trio implant in April 2006. R.771-772.

Marin was treated at the Center for Advanced Gasteroenterology from January 29, 2005 until January 27, 2006 complaining of rectal bleeding and epigastric pain. R. 838-856. He underwent a colonoscopy, and a 7 m.m. pylop in his descending colon was surgically excised. R. 842, 846 and 850-852.

From September 21, 2005 until July 3, 2006, Marin was treated at Central Florida Family Health Center where he complained of chest pain for eight months, lower back pain, and cervical spine pain. R. 953-963. Marin was treated by a psychiatrist, Jenaro Fernandez, Ph.D. M.D., from December 6, 2003 until December 6, 2004. R. 257-270. On October 1, 2004, he complained of being "stressed out", a lot of pain in his lower and middle back, and inability to move his fingers and weakness in his right hand and arm. R. 270. On September 20, 2004, Dr. Fernandez opined that Marin was not psychiatrically stable,

diagnosed an Adjustment Disorder with Anxiety and Depression and Bipolar Disorder and found that the patient was less hypomanic although he continued to have constant headaches. R. 268. At the patient's request Dr. Fernandez wrote a note, stating that Marin had improved, possibly as a result of taking his medications, and that, "he has a strong motivation to work" on December 6, 2004. R. 257 and 309.

Dr. Fernandez completed a Treating Source Mental Health Report dated October 15, 2004 in which he found that the patient's mood was hypomanic most of his life. R. 238. His thinking involved frequent circumstantiality and occasional flight of ideas. R. 238. He had great difficulties with attention and concentration when there was stimulation in the environment. *Id.* Due to his lack of concentration, his short term memory was poor and his prognosis was fair. R. 238-9.

In May 2005 he underwent a consultative psychological evaluation by Darlene Beers, Psy.D. R. 679-683. He complained of anxiety throughout the day and visual hallucinations including "shadows" and "monsters." R. 679. Dr. Beers found adequate recall or recent and remote events suggesting no severe short term or long term memory impairment, depressed mood and blunted affect, and sleep disturbance due to constant anxiety and pain. R. 681. She diagnosed mood disorder and substance-inducted psychotic disorder with hallucinations. R. 681. From March 20, 2006 until June 19, 2006, Marin was treated as an outpatient at Lakeside Alternatives for complaints of hallucinations and depression. R. 827-837. Upon examination his speech was slurred and he had loose associations. R. 836. He reported having auditory hallucinations, seeing rainbows and becoming paranoid and was diagnosed with a schizoaffective disorder, a major depressive disorder and rule out major depression with psychosis. R. 828-833 and 835-6. When his Risperdal was increased, his hallucinations and delusions abated, his memory was good and his affect was blunted. R. 828.

-11-

A Colombian physician treated Marin, in Columbia, from November 9, 2002 until July 14, 2005. R. 710-714. In a letter dated April 23, 2005, Dario Perez Alvarez, M.D. diagnosed Marin with chronic lumbar syndrome and dorsalgia, and irreversible loss of feeling in the first through fourth digits of the left hand. R. 943-947 and 712-714. In a second letter dated August 11, 2006, Dr. Perez stated that he knew Marin's U.S.A. clinical history of paranoia and left posterolateral disc herniation at C5-6 syndrome, chronic depression, severe chronic cervical dorsal spinal pain and hepatitis of more than three years' duration. R. 964-967. Dr. Alvarez concluded that Marin was 100 percent permanently and totally disabled and unable to perform his regular work duties due to severe and chronic pathological illnesses. R. 964-967.

After Marin applied for disability, he underwent a state physical assessment on September 14, 2004, and was found to have the following exertional limitations: that he could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand, walk and sit about six hours in an 8-hour day, and push and pull unlimited. R. 230. He underwent a second state physical assessment of June 9, 2005, and was found to have the same exertional limitations. R. 702.

He underwent a state mental assessment on November 20, 2004, and was found to have an affective disorder - Category 12.04 - of a depressive disorder NOS and an anxiety-related disorder - Category 12.06 - of an anxiety disorder NOS and the following functional limitations: moderate difficulties in maintaining concentration, persistence and pace. R. 243, 250. A second state mental assessment completed on the same date showed moderate limitations in Marin's ability to understand, remember and carry out detailed instructions, to maintain concentration, persistence and pace for extended periods, and to complete a normal workday and workweek without interruption from psychologically

based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 254-255. A third state mental assessment completed May 31, 2005 showed moderate limitations in the ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of interruptions. R. 698-699.

## B.    THE ANALYSIS

### 1.    Questions posed to VE by counsel

Marin asserts in his brief that the ALJ would not allow Marin's counsel to pose questions to the VE in a form other than a hypothetical.  He argues that there is no language in 20 C.F.R. Section 404.950(e)[2] limiting the form of the questions to a hypothetical question.  The Commissioner responds to Marin's argument maintaining that the ALJ did not act inappropriately in restricting the questions posed by Marin's counsel "as it was within his discretion to control the hearing." Doc. 13 at 4.  In fact, the Commissioner points out that the regulations provide a "vocational expert or specialist may offer expert opinion in response to a *hypothetical question* about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work." 20 C.F.R. § 404.1562(a)(2) (*emphasis added*).

The Eleventh Circuit has held that "[w]hen the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant will be able to secure employment in the national

---

[2]20 C.F.R. Section 404.950(e) provides that the administrative law judge may ask the witnesses any questions material to the issues and shall allow the parties or their designated representatives to do so.

economy." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999)).  Furthermore, Marin must show his claim was prejudiced by the conduct of the ALJ at the hearing. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (holding "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record").

The ALJ did not err in limiting the questions posed by Marin's counsel to hypothetical questions. Marin's counsel presented questions to the VE regarding the work schedule of a specified occupation and whether morning and afternoon breaks would be allowed. *See*, *e.g.*, R. 1049. The VE informed Marin's counsel that she did not have specific information regarding particular employers. *See generally* R. 1051-2. Therefore, Marin's counsel would not have retrieved any additional information had the ALJ permitted the questions. Marin was not prejudiced by the ALJ's conduct. Accordingly, there is no basis for the Court to disturb the ALJ's findings.

### 2.    Hypothetical Question Posed to the VE by ALJ

Marin maintains that the ALJ must pose a hypothetical question that includes all of the claimant's impairments in order for the VE's testimony to constitute substantial evidence. Specifically, Marin asserts that the ALJ asked the VE three hypothetical questions, and among those three questions, the ALJ failed to include that Marin has degenerative disc disease, Hepatitis C, and an affective disorder. *See* R. 1047-9. He argues that the ALJ alluded to "the mental limitations" in the hypothetical questions but did not specifically state what those limitations were. Finally, Marin states that the ALJ did not include the

findings that Marin has mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining attention, concentration, or pace. R. 25.

The Commissioner argues that the actual diagnosis is not what determines disability, but rather the functional limitations imposed by the diagnosis, and merely listing the medical diagnoses in the hypothetical question would be ineffective for the VE because he or she is not a medical expert. With respect to Marin's mental impairments, the Commissioner states that the ALJ appropriately concluded that Marin could perform, understand, remember and carry out simple and routine tasks (R. 27, Finding 6) and the VE testified that the identified jobs could be performed with those limitations (R. 1048). Finally, the Commissioner argues that the ALJ's findings that Marin has mild restrictions of activities of daily living, mild difficulties in maintain social functioning, and moderate difficulties in maintaining concentration, persistence, and pace were reasonably subsumed in the ALJ's overall RFC finding that Marin could perform simple and routine tasks (R. 25).

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing *Jones v. Apfel*, 190 F.3d at 1229)).  However, the ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported. *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004). The ALJ must instruct the VE to consider all "severe" impairments when eliciting testimony.  *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir.1985).

The Commissioner is correct that the ALJ does not have the obligation of delineating the medical diagnoses in the hypothetical questions posed to the VE, but rather, solely the limitations that result from the diagnoses.  Therefore, it was not necessary for the ALJ to include in the hypothetical questions that Marin suffered from degenerative disc disease, Hepatitis C, and an affective disorder. In the second hypothetical question posed by the ALJ, he informed the VE that "the individual can only understand, remember, and carry out simple instructions and [] perform simple, routine tasks." R. 1048. Following that hypothetical question, the ALJ refers to those limitations as the "mental limitations." *Id.* As already mentioned, the ALJ only has the obligation of listing the limitations that result from the diagnosis, which is precisely what the ALJ did in the second hypothetical.  Finally, the ALJ did not err is failing to include the findings that Marin has *mild* restrictions in activities of daily living, *mild* difficulties in maintaining social functioning, and *moderate* difficulties in maintaining attention, concentration, or page.  According to the Eleventh Circuit, only *severe* impairments must be considered when eliciting testimony from the VE.  Therefore, the ALJ posed appropriate hypothetical, and the VE's testimony constitutes substantial evidence.

## VI.    <u>CONCLUSION</u>

For the reasons stated above, the Court recommends the decision of the Commissioner be affirmed.

Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 6.02 within ten days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** on January 23, 2008, in Orlando, Florida.

*Donald P. Dietrich*

DONALD P. DIETRICH
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

The Honorable Gregory A. Presnell
United States District Judge

Richard A. Culbertson
Law Office of Richard A. Culbertson
3222 Corrine Dr., Suite E
Orlando, FL    32803

Mary Ann Sloan, Regional Chief Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

The Honorable Robert D. Marcinkowski
Administrative Law Judge
c/o Social Security Administration
Office of Disability Adjudication and Review
Suite 300
3505 Lake Lynda Dr.
Orlando, FL    32817-9801

-17-